RICHARD LLOYD, Plaintiff in Error, *v.* AMASA E. HIGBEE, Defendant in Error.

ERROR TO WARREN.

A party who has conveyed land to one by quit-claim, and has released his right to the same land to another, in good faith, is a competent witness, between the grantees, in a litigation to set aside one of the conveyances as having been fraudulently obtained.

A conveyance which has been obtained through fraud and covin, will be set aside ; and it is not in the mouth of the fraudulent grantee to say that his grantor did not exercise proper precaution.

A party who files his bill to set aside a conveyance as having been fraudulently obtained, will not be held to prove that the land is worth the precise amount he has stated it to be worth in his bill.

AMASA E. HIGBEE, who was complainant below, filed his bill in the Circuit Court of Warren, alleging that he is the legal owner in fee simple of the north-east quarter of section fifteen, township eight north, range three west of the fourth principal meridian, situate in Warren county, by chain of conveyances from the United States, as follows: 1st, a patent to Resin Newell ; 2nd, a deed from Resin Newell to Stephen Wheeler and S. F. Hunt; 3rd, a deed from S. F. Hunt to Stephen Wheeler ; 4th, a deed from Stephen Wheeler to George Williamson ; 5th, a deed from George Williamson to Amasa Higbee; 6th, a deed from Amasa Higbee to Amasa E. Higbee, said complainant; all of which deeds were recorded in said Warren county, except the said deed to the said complainant, a copy of which deed was filed and made a part of said bill, as an exhibit.

That on the 20th day of August, 1855, Richard Lloyd, defendant in said bill, obtained a quit-claim deed of said land from

Amasa Higbee, complainant's grantor, by fraud and circumvention, to wit: that said defendant called at the office of Amasa Higbee, in the city of Cincinnati, State of Ohio, and represented that he, Amasa Higbee, had an old military claim in the State of Illinois, somewhere in McDonough county, and desired to purchase said claim; that said Amasa Higbee remarked that he had no knowledge of any such claim, but that he owned 160 acres of land in Warren county, and would sell the same for $800. Said defendant remarked that said Higbee did have such a claim in McDonough county, and offered him $40 for it, which offer was accepted, and the parties went before the proper officer to execute the conveyance. That said defendant drew up the deed, and that said Higbee signed, acknowledged and delivered said deed, without examining the contents thereof, believing it to be some military claim in the county of McDonough, whereas it was, in fact, a deed to said Higbee's land in the county of Warren, of which the said defendant well knew, and knowingly and fraudulently deceived the said Higbee in relation thereto.

That said complainant is in actual possession of said land.

That said defendant has been frequently requested to reconvey said land to said Amasa Higbee and to complainant, but has refused so to do.

That the said Amasa Higbee has offered to said defendant repeatedly, before the commencement of this suit, to repay to him the said forty dollars, and to convey to said Lloyd the said old military claim in McDonough county, upon said Lloyd canceling said deed to him, or upon said Lloyd reconveying said land to said Amasa Higbee.

That said land, at the time of the conveyance to Lloyd, was worth one thousand dollars.

Prays that said deed to Lloyd be decreed to be given up to complainant to be canceled, etc.

The respondent, answering, says, that he has no knowledge that the complainant is seized of the legal title in fee simple in and to the said tract of land, except what is disclosed in complainant's bill, and requires proof, etc.

Respondent alleges that he has the legal title in fee simple to the same, and that so late as the 19th of June, 1856, the said land was not occupied or in the possession of any other person than himself, nor has he any knowledge of any other person since taking possession of the same.

Respondent admits the conveyances, as alleged in complainant's bill, down to and including the conveyance to Amasa Higbee, but as to the conveyance from said Higbee to complainant, he has no knowledge, except as disclosed by said bill.

Respondent further says, that Amasa Higbee conveyed said land to him on the 20th of August, 1855, which deed was duly recorded in the recorder's office of Warren county, on the 24th day of August, 1855, (a copy of which deed is exhibited with his answer,) and he denies that said deed was obtained from said Amasa Higbee by fraud or circumvention on his part.

That he never proposed to buy of the said Higbee any other than the said land in the said deed described, and that said Higbee never proposed to sell respondent any other than the land described; that he never represented to said Higbee that said land was located in McDonough county, and denies that said Higbee made said deed believing it was an old military claim in McDonough county. That said Higbee examined and read said deed before executing it.

Respondent denies that he has ever been requested by Amasa Higbee or said complainant to reconvey said land.

That said land was not worth anything like one-half of one thousand dollars.

Further says that he did not know anything of the value of the land when he purchased it; that until recently land in that township was far less valuable than in the adjoining townships.

Respondent denies that said Amasa Higbee ever offered to repay said forty dollars and convey to respondent said old military claim in McDonough county, but avers that said Higbee never informed him that he was dissatisfied with the sale of said quarter.

Denies all fraud and circumvention in said bill alleged.

To which answer the complainant filed his replication.

At the September term of said Circuit Court, this case was referred to the master in chancery to take evidence and report at the next term.

The testimony taken is as follows:

*Amasa Higbee* testified: I never knew defendant until August, 1855, when he came to my office and introduced himself to me. The plaintiff, Amasa E. Higbee, is my son. I first saw Mr. Lloyd in my office in Cincinnati, Ohio, or or about the 20th of August, 1855; found him in the office when I went in; told me he was from Illinois; asked me if I had an old military claim in Illinois; I replied, if I had I knew nothing about it; he said I had one of 160 acres; I asked him where it was located; he told me in McDonough county, Illinois; I asked him what it was worth; told me taxes had not been paid on it, and could not afford to give more than forty dollars, for it would be some trouble to get it straightened up; I told him I thought he could afford to give me something more. I remarked that I had 160 acres in Warren county, about twelve miles from Monmouth,

which I would like to sell; asked me what it was worth; I told I would not take less than eight hundred dollars. I told him I was in a hurry, as I wanted to leave the city. He remarked that he would see me again about the Warren county land that I wanted $800 for. I stepped out of the office for two or three minutes and then returned; conversation resumed about the military claim in McDonough county, and I consented to take forty dollars for it. Mr. Lloyd drew up a deed which he asked me to sign. He furnished the description in the deed from a memorandum book which he had in his pocket. I signed the deed, which was a quit-claim deed, and he paid me forty dollars. I copied in my memorandum book the description which Lloyd had inserted in the deed. This is all of the conversation we had, and the only conversation I ever had with him. The description which I copied in my book at that time, is as follows, viz., North-east quarter of Section 15, Town 8 north, Range 3, which he said was the description of the tract in McDonough county, which I had a military claim to. I kept no other copy of the deed or any part of it. I have owned the land in Warren county about twenty years; bought it of George T. Williamson, of Cincinnati; paid him for it $230; have furnished money to agents of mine in Illinois to pay the taxes, and have the receipts up to 1854 or 1855, in which year I sold the land to the plaintiff. Four or five weeks after the transaction with Lloyd, upon examining my papers, I for the first time discovered that the land conveyed by me to Lloyd, was the same in description as my Warren county land. I even then thought the description might be applicable to land in McDonough county, and did not know any better until I talked with Mr. Williamson, of whom I bought the Warren county land. I never did sell to Lloyd my Warren county land, and never intended to sell it to him, and never did convey it to him knowingly. I was induced the more readily to believe that possibly I might have some military claim in Illinois, as I was a soldier in 1812, and as a Mr. Anderson had before that time intimated that in Illinois such a tract had been set apart to me, and wanted to know what I would take for it. I paid no attention to what he told me, but as Lloyd afterwards called, I began to think perhaps I might have such a claim.

I never sold Lloyd my land in Warren county. Lloyd had a memorandum book which had my name in it, as he said, but I did not examine the book. When he drew the deed, he made the description in the deed from the book. I read nothing at all in the book. Lloyd said he couldn't afford to give me more than forty dollars for my military claim, as he called it, in McDonough county; I told him I thought he could give more.

He never offered me anything for my $800 tract in Warren county. After Lloyd wrote the deed, I read it and copied the description into my memorandum book. I copied the description into my memorandum book, but had no other description of land in it; did not have with me, during Lloyd's visit, the description of my Warren county land, and did not compare the Lloyd deed with my Warren county land description until afterwards, as I before stated. I have never offered Lloyd forty dollars to reconvey to me said land; I never knew what place in Illinois to find him, even if I had wanted to. I have not offered to convey to Lloyd the claim in McDonough county; not had an opportunity of so doing, not knowing where he lived. I never notified or advised Lloyd that I was dissatisfied with the sale of said north-east 15, 8 north, 3 west; never knew where a notice would reach him. If I owned any land in McDonough county, I did not know it; he assured me that I did. I never, to my knowledge, owned any land in McDonough county.

*James B. Higbee* testifies, that the complainant is his father. The only time I ever saw Lloyd was in August, 1855, at my father's office. Richard Lloyd, as he called himself, asked my father in my presence if he knew he had an old military claim in the State of Illinois; father replied that if he had he knew nothing about it; father asked where it was located; Lloyd told him it was somewhere in McDonough county; father asked him what it was worth; Lloyd said that the taxes had never been paid up, and was much incumbered, and thought that forty dollars was a fair price—was as much as he would give. Father told Lloyd he had 160 acres in Warren county which he wanted to sell; replied to Lloyd that it was about twelve miles from Monmouth; Lloyd asked the price; father said he held it at $800; Lloyd said he was going that way soon, and would inquire what land was worth in that neighborhood. I then went out of the office; immediately after, father came out and said to me he believed he would take forty dollars for the military claim, as he knew nothing about it and thought it more trouble than the land was worth to hunt it up. On that day father was preparing to start for Pennsylvania, and gave me forty dollars to deposit, saying it was the money he got for the claim.

At the March term of said Warren Circuit Court, THOMPSON, Judge, presiding, the following proceedings were had:

It being shown to the court by the exhibits and depositions on file, that the allegations in complainant's bill are fully proved, it is therefore ordered, adjudged and decreed, that the deed made by Amasa Higbee to Richard Lloyd, dated August 20th, 1855, conveying to him north-east 15, 8 north, 3 west of the 4th principal meridian, be set aside and for nought held. That

said defendant deliver up to the clerk of said court said deed within thirty days, to be canceled, and that said defendant deliver to said clerk, for said complainant, within thirty days, a conveyance in fee of said tract of land to him; and in default thereof, said clerk to make such deed to complainant as special commissioner, conveying all the interest of said defendant to said land, and that the costs of the case be paid by said defendant, etc.

H. M. WEAD, for Plaintiff in Error.

G. F. HARDING, for Defendant in Error.

WALKER, J. It is first insisted, as grounds of reversal of the decree, that Amasa Higbee was not a competent witness in this case. He, by his quit-claim deed, incurred no liability to Lloyd, nor to defendant in error by his release to him. If this release to complainant was made in good faith, and the record discloses nothing to indicate that it was not, he thereby became divested of all interest in the premises in controversy. The fact that complainant was his son, may create a suspicion that he is not free from bias, and the fact that he had previously conveyed to Lloyd, may go to his credibility, but not to his competency. His attitude to the case is such, as no doubt requires a close scrutiny of his evidence, and unless it is clearly consistent, and in manner free from the appearance of bias, or is not corroborated, it might have but little weight. But in this case his evidence is corroborated, in all of its material parts, by other testimony, and should therefore receive such weight as those considerations demand.

The bill alleges that Amasa Higbee was the owner of the land in controversy, and that plaintiff in error, in August, 1855, by fraud, obtained a deed of quit claim for the premises. That plaintiff in error called upon him, and represented that he had an old military claim on a quarter of land in McDonough county, Illinois, and proposed to purchase it; that Higbee denied all knowledge of having such a claim, but informed plaintiff in error that he owned a quarter of land in the adjoining county of Warren, which he would sell for $800. Plaintiff in error insisted that Higbee had a claim on a tract in McDonough, and offered to give for it the sum of forty dollars, which offer was accepted, when plaintiff in error prepared a quit claim deed, which was, without examination, signed and executed by Higbee, under the belief induced by the representations of plaintiff in error, that it was for land in McDonough, and not in Warren county, when it was in fact for the land in

controversy. That Lloyd well knew the facts, and by false and fraudulent representations, knowingly, designedly and fraudulently procured the execution of the deed of conveyance.

The evidence in the case, we think, abundantly establishes these allegations. It shows that plaintiff in error never proposed to purchase the land in controversy, but only an old and stale claim on a quarter of land in McDonough county, whilst he inserted into the deed the description of the premises in controversy. He evidently designed to mislead Higbee, and succeeded, as Higbee did not intend to convey, nor did he suppose that he was conveying this land. He had fixed the price on this parcel of land at eight hundred dollars, and it appears from no portion of the evidence that he abated, or was willing to abate, any thing from that price. Plaintiff in error further misled him by agreeing to look after this land, and to ascertain its value, and to make an offer for its purchase. This was all done when Higbee was in the hurry incident to leaving home on a journey, in the absence of his title deeds and other papers connected with the land. There can be no question that this amounted to a fraud on the part of plaintiff in error, as Higbee relied upon and was deceived by these representations, and was induced to make a conveyance of land, he was not willing to sell for a much larger price than he received.

It is, however, urged that Higbee did not use proper and reasonable circumspection by referring to his title deeds, maps and other papers as sources of information, and should therefore abide the consequences of his want of caution. It may be that he was not as suspicious that plaintiff in error was unworthy of belief, as he should have been. It may be that feeling conscious of his own honesty, he the more naturally judged plaintiff in error by the same standard; but even if this be true, it does not lie in the mouth of plaintiff in error to say that Higbee gave him too much credit for veracity. We are not prepared to say that Higbee's conduct in the matter was grossly careless, and unless it was, he or those claiming under him, are not estopped from relying upon the fraud. He had, it appears, served in the war of 1812, and had been informed that it gave him a claim for bounty land in Illinois. This being the case, he was the more readily misled, and would not be so apt to refer to his deeds or other sources of information.

It is likewise urged that the evidence fails to show that the land is worth one thousand dollars, as alleged in the bill, and that as the proof fails to support this allegation, the decree should be reversed. We do not understand the practice to require that this allegation should be proved precisely as made, but if substantially proved it will suffice. The principal object

in making and proving this allegation is to afford evidence that the person defrauded did not design to enter into the agreement, as the fact that property is not usually sold for a small fraction of its value. And where fraud is charged, and it appears that the price given is much less than the real value of the property, it is a strong circumstance to prove the fraud; as the love of gain, and the disinclination of all men to abandon their property, is so strong that it is unusual for persons knowingly to part with property of great value for only a trifle. In this case, the answer denies that the land was worth the half of a thousand dollars, but it fails to deny that it was worth no more than the price given. The conveyance having been fraudulently obtained, even if it was essential to the maintenance of the bill that it should have been for a less sum than the value of the land, if there was a material difference in the value of the land and the price given, it would authorize the court to decree a rescission. Here the answer impliedly admits that the land was worth more, perhaps many fold more than the price paid. This is unquestionably sufficient to evoke the power of the chancellor to afford the relief sought, and to require the rescission of the sale, and a conveyance.

For these reasons, we are of the opinion that the decree of the court below must be affirmed.

*Decree affirmed.*