(No. 15275.—Decree affirmed.)

FRED HESS *et al.* Appellees, *vs.* PHILIPP WEICKER *et al.* Appellants.

*Opinion filed April 18, 1923—Rehearing denied June 7, 1923.*

1. CONTRACTS—*party guilty of deliberate fraud cannot impute negligence for failure to discover it.* Where a party intentionally and deliberately perpetrates a fraud in drawing up a contract, it is not his privilege to set up the defense in a suit to set aside the contract that the defrauded party was not sufficiently careful to discover the fraud and prevent its accomplishment.

2. SPECIFIC PERFORMANCE—*when decree for performance of option is not erroneous in failing to set time for tender of purchase price.* A decree for specific performance of an option for the purchase of real property is not erroneous in failing to set a time within which the purchaser is to tender the balance of the purchase price, which was not ascertained definitely at the time of the decree, where the decree provides for the execution of a deed by the master in case of the refusal of the vendors to make the deed and retains jurisdiction for the execution of the decree so as to protect the rights of all parties.

APPEAL from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding.

ALBERT WESLEY GOTTSCHALK, for appellants.

JOSEPH G. SHELDON, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

A decree was entered in the superior court of Cook county in a suit in equity in which the appellees, Fred Hess and Martha H. Hess, his wife, were complainants, and the appellants, Philipp Weicker and Mary Weicker, his wife, were defendants, canceling a contract for the purchase by the complainants of premises in Chicago and enforcing specific performance by the defendants of an option for such purchase. From that decree this appeal was prosecuted.

Philipp Weicker was the owner of a lot in Chicago with a frontage of 30 feet on Irving Park boulevard and running back 125 feet to an alley. It was known and designated as 3549 Irving Park boulevard, and on it there was a brick building running back from the boulevard about 110 feet, two stories in height, except at the rear. In the building Weicker conducted a retail bakery and confectionery business, with a bakeshop, and there was a flat in the second story. On September 20, 1919, Fred Hess purchased the business, and Weicker and his wife executed a lease to him for the entire first floor and the west half of the basement to be used as a private residence, bakeshop and store, and for no other purpose, for a term of ten years, at a rental of $11,460, payable $85 per month for the first thirty-six months and $100 per month for the remaining eighty-four months, payable monthly in advance. The lease contained the following option: "In consideration of one dollar and other good and valuable consideration, the party of the second part have first option to purchase premises 3549 Irving Park boulevard, Chicago, at price of $18,000 at any time within two years." All rent due having been paid, on July 20, 1921, Hess gave notice of his intention to purchase the premises under the option. Weicker procured a contract to be prepared dated August 16, 1921, by a real estate broker, to be executed by himself and his

wife, for a conveyance to Hess and his wife as joint ten-
ants. On August 20, 1921, Hess and Weicker met at the
office of the real estate broker, and after some discussion
about prorating taxes the contract provided that $1000 was
to be paid by Hess and $17,000 was to be paid when a good
and sufficient general warranty deed was ready for deliv-
ery, and the taxes for the year 1921 were to be prorated
at the date of the delivery of the deed. The contract was
signed by Hess and Weicker and was afterwards signed
by their respective wives. The $1000 was paid and Weicker
gave a receipt for it, the money to be applied on the con-
tract. The legal description of the property was lot 6 in
block 2 in Bickerdike's addition to Irving Park,—a subdi-
vision of lands described by government description. The
contract as written was for the conveyance of that lot by
such description, "except the east four feet eleven and one-
half inches (4 ft. 11½ in.)" The brick building covered
a trifle over 25 feet of the west part of the lot, and on the
east part, excepted in the contract, there was a cement walk
running along the building back to the alley, with air-shafts
and gratings in the walk, connecting with the basement by
windows below and giving access to the flat above by a
door on the east side of the building near the rear and
leading to a woodshed at the rear of the lot. In Septem-
ber, 1921, Hess learned of the fraud which had been prac-
ticed upon him by the exception written in the contract and
refused to accept a deed under the contract. He filed his
bill against Weicker and his wife, and afterward amended
it by adding his wife, Martha, as a complainant because she
had signed the contract. The bill as amended sought a
cancellation of the contract and performance of the option.
The chancellor heard the evidence, canceled the contract
and decreed specific performance of the option, requiring
the defendants to convey the premises upon the tender of
$17,000, with interest from September 20, 1921, at six per
cent, together with whatever amounts the defendants might

have paid for the general taxes for the year 1921 and for installments of special assessments unpaid on August 20, 1921, deducting from such amount so to be paid the rents collected by the defendants from September 20, 1921, to which rent had been paid up to the date when the tender should be made.

The fact that the contract as written by the real estate broker and executed by the parties was not in accordance with the option contained in the lease under which Fred Hess had given his notice is not denied. The only effort made at the hearing or upon this appeal to prevent relief against the fraud is that the complainants were negligent in not discovering it. The abstract furnished by the appellants disregards the rules of the court for the evident purpose of presenting that alleged defense. It omits or abbreviates testimony for the complainants showing that they were not negligent and sets forth testimony for the defendants at length by questions and answers. Nearly all of the argument is taken up with questions and answers of Weicker and the real estate broker for the purpose of showing that the contract was read to Hess at the broker's office and afterward to his wife. For this entire disregard of the rules the decree might well be affirmed, but the appellees have furnished an additional abstract in conformity with the rules of the court, and we prefer to deal with the merits and give the reasons requiring an affirmance.

Fred Hess testified that he did not know the legal description of the lot; that he did not have his glasses at the broker's office and could not read the contract without them; that he did not try to read it, and that the broker in reading it did not read the exception. Martha H. Hess testified that she signed the contract without reading it when it was brought to her by the broker because her husband had signed it. The broker and Weicker testified that the contract was read in full at the broker's office, and the broker testified that he also read it to Mrs. Hess. Whether

308—18

the contract was read was a controverted question, and if that fact were of any importance it is very likely that it was read, but no one would believe for a moment that either Hess or his wife signed the contract with knowledge of the fact that they were being cheated and defrauded. In most cases if the intended victim of a fraud is suspicious of the party with whom he is dealing and exercises a high degree of care he will discover the fraud, but where there is an intentional and deliberate fraud, as there was in this case, it is not the privilege of the perpetrator of the fraud to interpose a defense that the one defrauded was not sufficiently careful to discover the fraud and prevent its accomplishment. In such a case one cannot impute negligence as against his own deliberate fraud and say that the party defrauded gave him too much credit for honesty. (*Lloyd* v. *Higbee,* 25 Ill. 603; *Linington* v. *Strong,* 107 id. 295; *Leonard* v. *Springer,* 197 id. 532.) While the alleged defense is not available, the complainants were not guilty of negligence under the circumstances.

While there is no assignment of error covering the subject, it is said the decree was unfair because it did not set a time within which Hess was to tender the balance of the purchase price. The amount to .be paid was not fixed by the decree but included amounts paid by the defendants for taxes and installments of special assessments, deducting rents collected. The decree provided for the execution of a deed by the master in chancery upon refusal by the defendants, and the court expressly retained jurisdiction for the execution of the decree. The chancellor would require the tender within a reasonable time in accordance with the decree, so as to protect the rights of all parties.

The decree is affirmed.                    *Decree affirmed.*